FILED

2012 DEC 14  AM 9: 10

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| ROLEX WATCH U.S.A., INC.,<br><br>Plaintiff,<br><br>v.<br><br>ACTION INDUSTRIES, L.L.C., CROWN JEWELERS AND TIMEPIECES LLC, TOMAS JIMENEZ, JR., and ALESSANDRO JIMENEZ, all individually and doing business as "CENTRAL FLORIDA ROLEX", CENTRALFLORIDAROLEX.COM, JACKSONVILLEROLEX.COM, JAXROLEX.COM, AND TAMPAROLEX.COM; UNKNOWN WEBSITES 1-10; UNKNOWN ENTITIES 1-10; and "JOHN DOES" 1-10,<br><br>Defendants. | CIVIL ACTION NO. 6:12CV1866-ORL-28TBS<br><br>COMPLAINT FOR CYBERSQUATTING AND TRADEMARK INFRINGEMENT |

Plaintiff Rolex Watch U.S.A., Inc. ("Rolex"), by its attorneys hereby complains of defendants Action Industries, L.L.C., Crown Jewelers and Timepieces LLC, Tomas Jimenez, Jr., and Alessandro Jimenez, all individually and doing business as "Central Florida Rolex", centralfloridarolex.com, jacksonvillerolex.com, jaxrolex.com, and tamparolex.com; Unknown Websites 1-10; Unknown Entities 1-10; and "John Does" 1-10 (hereinafter collectively referred to as "Defendants") as follows:

- 1 -

## STATEMENT OF THE CASE

1. This is a suit by Rolex against Defendants for damages, statutory damages, treble damages and/or profits, injunctive relief, compensatory damages, pre-judgment interest, attorneys' fees, costs and expenses. Defendants are being sued by Rolex as a result of Defendants' unauthorized use of Rolex's federally registered trademarks. As set forth below, Defendants' unlawful acts constitute willful federal trademark infringement and cybersquatting.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the federal trademark claims asserted in this action under 15 U.S.C. §1121, and 28 U.S.C. §§1331 and 1338.

3. Defendants are subject to this Court's jurisdiction because they reside and do business in the Middle District of Florida and have committed the acts complained of herein in this District.

4. Defendants are subject to the jurisdiction of this Court pursuant to and in accordance with Rule 4 of the Federal Rules of Civil Procedure.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

6. Rolex is a corporation duly organized and existing under the laws of the State of New York, having an office and principal place of business at 665 Fifth Avenue, New York, New York 10022.

7.Upon information and belief, defendant Action Industries, L.L.C. ("Action Industries") is a Florida corporation with its principal place of business located at 111 E. Washington Street, Unit 2216, Orlando, FL 32801. Defendant Tomas Jimenez, Jr. is the registered agent and manager of Action Industries.

8.Upon information and belief, defendant Crown Jewelers and Timepieces LLC ("Crown Jewelers") is a Florida corporation with its principal place of business located at 10060 Skinner Lake Drive, 500, Jacksonville, FL 32246. Defendant Alessandro Jimenez is the registered agent and manager of Crown Jewelers.

9.Upon information and belief, defendant Tomas Jimenez, Jr. is a resident of the State of Florida residing at 111 E. Washington Street, Unit 2216, Orlando, FL 32081.

10.Upon information and belief, defendant Alessandro Jimenez is a resident of the State of Florida residing at 8451 Gate Parkway West, Apt. 841, Jacksonville, FL 33216.

11.Upon information and belief, "Central Florida Rolex" is a fictitious business entity under which Defendants are conducting business. Defendants are the owners, operators and/or controlling forces behind "Central Florida Rolex".

12.Upon information and belief, Defendants are the registrants, owners, operators and/or controlling forces behind the following domain names and corresponding websites: centralfloridarolex.com, jacksonvillerolex.com, jaxrolex.com, and tamparolex.com (hereinafter collectively referred to as the "Infringing Domains").

13.The identities of Unknown Websites 1-10, Unknown Entities 1-10, and "John Does" 1-10 are not currently known to Rolex, but, upon information and belief, they are associated with Defendants and contribute to Defendants' infringing activities. Rolex will

identify these Unknown Websites, Unknown Entities, and "John Does" upon further knowledge and investigation.

## FACTUAL ALLEGATIONS

### A. Rolex's Famous Products and Trademarks

14. Rolex is the exclusive distributor and warrantor in the United States of Rolex watches, all of which bear one or more of Rolex's federally registered trademarks.

15. Rolex watches are identified by the trade name and trademark ROLEX and one or more of Rolex's federally registered trademarks ("Rolex Watches").

16. Rolex is responsible for assembling, finishing, marketing and selling in interstate commerce high quality Rolex watches, watch bracelets and related products for men and women.

17. Rolex owns numerous trademarks, including, but not limited to, the trademarks and trade names ROLEX, PRESIDENT, CROWN DEVICE (design), DATEJUST, SEA-DWELLER, OYSTER, OYSTER PERPETUAL, GMT-MASTER, YACHT-MASTER, SUBMARINER, ROLEX DAYTONA, DAYTONA, EXPLORER II, TURN-O-GRAPH and GMT-MASTER II (hereinafter referred to as the "Rolex Registered Trademarks").

18. Rolex is the owner of, including but not limited to, the following federal trademark registrations in the U.S. Patent and Trademark Office:

| Trademark | Reg. No. | Reg. Date | Goods |
|---|---|---|---|
| ROLEX | 101,819 | 1/12/15 | Watches, clocks, parts of watches and clocks, and their cases. |

A correct and true copy of Rolex's federal trademark registration for this mark is attached hereto as **Exhibit 1**.

19. The Rolex Registered Trademarks are arbitrary and fanciful and are entitled to the highest level of protection afforded by law.

20. The Rolex Registered Trademarks are famous throughout the United States.

21. Rolex and its predecessors have used the Rolex Registered Trademarks for many years on and in connection with watches, related products and in advertisements, posters and print ads. The Rolex Registered Trademarks identify high quality products originating with Rolex.

22. Based upon Rolex's extensive advertising, sales and the wide popularity of Rolex products, the Rolex Registered Trademarks are now famous and have been famous since well prior to the activities of the Defendants complained of herein. Rolex Registered Trademarks have acquired secondary meaning so that any product or advertisement bearing such marks is immediately associated by consumers, the public and the trade as being a product or affiliate of Rolex.

23. Rolex has gone to great lengths to protect its name and enforce the Rolex Registered Trademarks.

## B. Defendants' Infringing Activities

24. Upon information and belief, long after Rolex's adoption and use of the Rolex Registered Trademarks on its products and after Rolex's federal registration of the Rolex Registered Trademarks, Defendants, in bad faith, registered and maintain numerous domain

names containing the Rolex Registered Trademarks and utilized the ROLEX trademark in their business name without authorization.

25. On or about October 12, 2012, Rolex discovered the domain and website, www.centralfloridarolex.com. This website is being used to offer for sale and sell Rolex Watches. Defendants advertise the name of their business as "Central Florida Rolex". Further, Defendants reproduce copyrighted Rolex images on this website without authorization. A printout of the centralfloridarolex.com website is attached hereto as **Exhibit 2** and incorporated herein by reference.

26. Defendants are using the ROLEX trademark in their business name without authorization from Rolex and with the intent to confuse the public to believe that they are authorized and/or endorsed by Rolex. "Central Florida Rolex" is not an authorized business entity. The fact that Defendants are clandestinely operating an unauthorized business entity further demonstrates that their infringement is willful.

27. Further, the centralfloridarolex.com domain contains an unauthorized use of the ROLEX trademark and creates the false and misleading appearance that the domain and its website are endorsed and/or authorized by Rolex. Defendants are using the ROLEX trademark to increase web traffic to Defendants' website.

28. On September 30, 2012, the centralfloridarolex.com domain was created and registered to Action Industries and Tomas Jimenez, Jr. is the Administrative and Technical contact. A copy of the "Whois" information for this domain is attached hereto as **Exhibit 3** and incorporated herein by reference.

29. On or about October 12, 2012, Rolex's counsel sent a cease and desist letter to Defendants, via e-mail and First Class Mail, warning them of the consequences of their trademark infringement, cybersquatting and other unauthorized activities. A copy of this letter is attached hereto as **Exhibit 4** and incorporated herein by reference.

30. On or about October 13, 2012, Rolex's counsel received an e-mail from Tomas Jimenez, Jr. whereby, without solicitation, he demanded that Rolex wire transfer $500 to Action Industries in exchange for transfer of the centralfloridarolex.com domain to Rolex. Rolex's counsel refused such demand.

31. The demand for money for the cybersquatted domain further demonstrates that Defendants' infringement is willful.

32. Despite receiving the cease and desist letter and even corresponding with Rolex, Defendants' unauthorized activities concerning the Rolex Registered Trademarks continued.

33. Just two days after receiving the cease and desist letter, on October 12, 2012, Defendants registered the tamparolex.com domain. The corresponding website to this domain does not, nor has it ever, contained any content. A printout of this website and a copy of the "Whois" information is attached hereto as **Exhibit 5** and incorporated herein by reference.

34. Since Defendants were placed on notice concerning their unauthorized activities, there can be no doubt but that Defendants' infringement of the Rolex Registered Trademarks is willful and done with the intent to obtain money from Rolex for the domains.

35. On or about November 6, 2012, a second cease and desist letter was sent, via e-mail and First Class Mail, to Defendants further warning them of the consequences of their

unauthorized activities concerning the Rolex Registered Trademarks. A copy of this letter is attached hereto as **Exhibit 6** and incorporated herein by reference.

36. Despite this second case and desist letter, Defendants' unauthorized activities concerning the Rolex Registered Trademarks continued.

37. On or about November 29, 2012, Rolex discovered that Defendants also registered the domains jaxrolex.com and jacksonvillerolex.com. A copy of the "Whois" information for these domains is attached hereto as **Exhibit 7** and incorporated herein by reference.

38. Both the jaxrolex.com and jacksonvillerolex.com domains redirect to the concoursewatches.com website, which is operated by Crown Jewelers. This website is being used to offer for sale and sell Rolex Watches. Further, this website reproduces copyrighted Rolex images without authorization. Crown Jewelers is the registered owner of this website and Alessandro Jimenez is listed as the Administrative and Technical Contact for this website.

39. Since both the jaxrolex.com and jacksonvillerolex.com domains are being redirected to Defendants' other website, it is clear that Defendants are using the ROLEX trademark in its domain names in order to generate traffic to their website and confuse the public to think they are sponsored and/or endorsed by Rolex.

40. On November 30, 2012, a third cease and desist letter was sent, via e-mail and First Class Mail, to Defendants again warning them of the consequences of their unauthorized activities. A copy of this letter is attached hereto as **Exhibit 8** and incorporated herein by reference.

41. To date, despite receiving numerous cease and desist letters and even communicating with Rolex's counsel, Defendants own, continue to operate and remain the moving and controlling forces behind the Infringing Domains and the "Central Florida Rolex" business.

C. **Summary of Defendants' Unauthorized Activities**

42. Defendants intentionally, maliciously and willfully registered, own and maintain a business entity and domains improperly containing the Rolex Registered Trademarks, despite knowledge that such actions are unauthorized.

43. Defendants' acts were calculated to confuse and to deceive the public and are performed with full knowledge of Rolex's rights.

44. Defendants are not now, nor have they ever been, associated, affiliated, connected with, endorsed or sanctioned by Rolex.

45. Rolex has never authorized or consented in any way to Defendants' use of the Rolex Registered Trademarks or marks confusingly similar thereto.

46. Defendants' use of the Rolex Registered Trademarks, or marks substantially indistinguishable and/or confusingly similar thereto, is likely to cause consumers, the public and the trade to erroneously believe that said business and said websites and domains are authorized, sponsored, or approved by Rolex, even though they are not. This confusion causes irreparable harm to Rolex and weakens and dilutes the distinctive quality of the Rolex Registered Trademarks.

47. Defendants' use of the Rolex Registered Trademarks, or marks substantially indistinguishable and/or confusingly similar thereto, is likely to cause consumers, the public

and the trade to erroneously believe that Defendants are associated with or endorsed by Rolex.

48. By using the Rolex Registered Trademarks in their business name, websites and domains, Defendants are trading on the goodwill and reputation of Rolex and creating the false impression that Defendants are affiliated with Rolex.

49. Defendants have been unjustly enriched by illegally using and misappropriating Rolex's intellectual property for their own financial gain. Furthermore, Defendants have unfairly benefited and profited from Rolex's outstanding reputation for high quality products and its significant advertising and promotion of Rolex watches and the Rolex Registered Trademarks.

50. Defendants have disparaged Rolex, its Rolex Registered Trademarks and its products by creating a false association with Rolex, its genuine goods and its Rolex Registered Trademarks.

51. Rolex has no control over the nature and quality of the Defendants' Infringing Domains, corresponding websites, and the products they distribute.

52. Among other things, Defendants' promotion and advertisement of its business and its Infringing Domains have and will reflect adversely on Rolex as the believed source of origin thereof; hamper continuing efforts by Rolex to protect its outstanding reputation for high quality, originality and distinctive goods; and tarnish the goodwill and demand for genuine Rolex watches and products.

53. Upon information and belief, Defendants have acted with reckless disregard for Rolex's rights and/or were willfully blind in connection with unlawful activities. Upon

information and belief, Defendants have willfully and maliciously engaged in infringing activities. Therefore, this case constitutes an exceptional case under 15 U.S.C. § 1117(a).

54. Rolex has suffered irreparable harm and damages as a result of Defendants' conduct. The injuries and damages sustained by Rolex have been directly and proximately caused by the Defendants' wrongful actions.

55. Rolex has no adequate remedy at law.

56. Defendants' wrongful acts will continue unless enjoined by the Court. Accordingly, Defendants must be restrained and enjoined from any further infringement of the Rolex Registered Trademarks.

### FIRST CLAIM FOR RELIEF
**(Federal Anti-Cybersquatting (Anti Cyberpiracy), 15 U.S.C. § 1125(d)(1)(A))**

57. Rolex hereby incorporates by reference all prior allegations as though fully set forth herein.

58. Upon information and belief, Defendants registered and/or use in bad faith the Infringing Domains, which incorporate trademarks confusingly similar to the Rolex Registered Trademarks.

59. The Infringing Domains are substantially indistinguishable from, confusingly similar to and/or dilutive of the Rolex Registered Trademarks in violation of the Anti-Cybersquatting Consumer Act, 15 U.S.C. § 1125(d)(1)(A)(ii)(II).

60. Defendants' registration and/or use of the Infringing Domains is not sponsored or authorized by Rolex.

61. Defendants have no trademark or other intellectual property rights in the Infringing Domains and have acted in bad faith with the intent to profit from the goodwill of

the Rolex Registered Trademarks.

62. Defendants have no bona fide commercial use of the Infringing Domains as several of these sites have no content and/or redirect to other websites.

63. Defendants offered to sell the Infringing Domains for a significant financial gain without having used or intended to use these domains for bona fide reasons, thus exhibiting their bad faith registration of the Infringing Domains.

64. Defendants purchased numerous Infringing Domains containing the Rolex Registered Trademarks, thus exhibiting their bad faith registration of the Infringing Domains by warehousing so many domain names.

65. Defendants registered one of the Infringing Domains after receiving a cease and desist letter notifying them of their unauthorized activity, thus exhibiting their bad faith registration of the Infringing Domains.

66. Clearly, Defendants are in the business of purchasing and holding domain names for a ransom from the legitimate intellectual property rights' holder, Rolex, and earning revenue by drawing consumers to its website which distributes products for sale.

67. Defendants' aforementioned acts constitute Cybersquatting (Cyberpiracy) in violation of 15 U.S.C. § 1125(d)(1)(A).

68. By reason of the foregoing, Defendants are liable to Rolex for (a) Rolex's actual damages and Defendants' profits; or (b) statutory damages in an amount up to $100,000 per domain, as provided by 17 U.S.C. § 1117(d).

## SECOND CLAIM FOR RELIEF
(Trademark Infringement, 15 U.S.C. § 1114)

69. Rolex hereby incorporates by reference all prior allegations as though fully set forth herein.

70. Based on Rolex's extensive advertising under the Rolex Registered Trademarks, its extensive sales and the wide popularity of Rolex Watches, the Rolex Registered Trademarks have acquired a secondary meaning so that any product, advertisement or domain bearing such trademarks is immediately associated by purchasers and the public as being an affiliate of Rolex.

71. Defendants' activities constitute Defendants' use in commerce of the Rolex Registered Trademarks. Defendants use the Rolex Registered Trademarks in connection with the "Central Florida Rolex" business name and Infringing Domains and corresponding websites.

72. Defendants have used the Rolex Registered Trademarks in the "Central Florida Rolex" business name and Infringing Domains, knowing they are the exclusive property of Rolex.

73. Defendants' activities create the false and misleading impression that Defendants are sanctioned, assigned or authorized by Rolex to use the Rolex Registered Trademarks in the "Central Florida Rolex" business name and Infringing Domains when Defendants are not so authorized.

74. Defendants engage in the aforementioned activity with the intent to confuse and deceive the public into believing that they are in some way sponsored, affiliated or associated with Rolex, when in fact they are not.

75. Defendants' use of the Rolex Registered Trademarks in the "Central Florida Rolex" business name and Infringing Domains has been without the consent of Rolex, is likely to cause confusion and mistake in the minds of the public and, in particular, tends to and does falsely create the impression that they are warranted, authorized, sponsored or approved by Rolex when, in fact, they are not.

76. Defendants' unauthorized use of the Rolex Registered Trademarks in the "Central Florida Rolex" business name and Infringing Domains has resulted in Defendants unfairly benefiting from Rolex's advertising and promotion, and profiting from the reputation of Rolex and the Rolex Registered Trademarks, to the substantial and irreparable injury of the public, Rolex and the Rolex Registered Trademarks and the substantial goodwill represented thereby.

77. Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

78. By reason of the foregoing, Defendants are liable to Rolex for: (a) an amount representing three (3) times Rolex's damage and/or their illicit profits; and (b) reasonable attorney's fees and pre-judgment interest pursuant to 15 U.S.C. § 1117.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Rolex respectfully requests that the Court order the following relief:

I.     That the Court enter an injunction ordering that Defendants, their agents, servants, employees, and all other persons in privity or acting in concert with them be enjoined and restrained from:

(a)    using any reproduction, copy, or colorable imitation of the Rolex Registered Trademarks to identify any services not authorized by Rolex;

(b)    engaging in any course of conduct likely to cause confusion, deception or mistake, or injure Rolex's business reputation or weaken the distinctive quality of the Rolex Registered Trademarks, Rolex's name, reputation or goodwill;

(c)    using a false description or representation including words or other symbols tending to falsely describe or represent themselves as being sponsored by or associated with Rolex and from offering such goods in commerce;

(d)    making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that Defendants are in any way associated or connected with Rolex, or is provided, sold, manufactured, licensed, sponsored, approved or authorized by Rolex;

(e)    engaging in any conduct constituting an infringement of any of the Rolex Registered Trademarks, of Rolex's rights in, or to use or to exploit, said trademark, or constituting any weakening of Rolex's name, reputation and goodwill;

(f)    using or continuing to use the Rolex Registered Trademarks or trade names in any variation thereof on the Internet (either in the text of a website, as a domain name, or as a keyword, search word, metatag, or any part of the description of the site in any submission for registration of any Internet site with a search engine or index) in connection with any goods or services not directly authorized by Rolex;

(g) hosting or acting as Internet Service Provider for, or operating or engaging in the business of selling any website or other enterprise that offers for sale any products bearing the Rolex Registered Trademarks;

(h) acquiring, registering, maintaining or controlling any domain names that include the ROLEX trademark or any of the other Rolex Registered Trademarks or any marks confusingly similar thereto, activating any website under said domain names, or selling, transferring, conveying, or assigning any such domain names to any entity other than Rolex;

(i) secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, or displaying of all unauthorized products which infringe the Rolex Registered Trademarks; and

(j) effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (i).

II. That Defendants, within ten (10) days of judgment, take all steps necessary to remove from all domains and/or websites owned, operated or controlled by the Defendants, all impermissible use of the Rolex Registered Trademarks.

III. That Defendants, within thirty (30) days of judgment, file and serve Rolex with a sworn statement setting forth in detail the manner and form in which they have complied with this injunction pursuant to 15 U.S.C. § 1116(a).

IV. That Defendants be ordered to stop advertising and doing business under the "Central Florida Rolex" name.

V. That Defendants and/or their Internet Service Provider and/or Registrar be ordered to transfer to Rolex or to place on Registry Hold Status the Infringing Domains and

any domain names and websites used by Defendants to engage in their unauthorized activities concerning the Rolex Registered Trademarks.

VI. Requiring Defendants to pay to Rolex such damages that Rolex has sustained as a consequence of their cybersquatting of the Rolex Registered Trademarks and to account for all gains, profits and advantages therefrom derived; alternatively, that Rolex be awarded statutory damages pursuant to 15 U.S.C. § 1117(d) of up to $100,000 per infringing domain.

VII. Requiring Defendants to pay to Rolex such damages Rolex has sustained as a consequence of their infringement of the Rolex Registered Trademarks and to account for all gains, profits and advantages derived by Defendants' unauthorized activities, and that the award to Rolex be trebled as provided for under 15 U.S.C. § 1117.

VIII. Ordering that Rolex recover the costs of this action, together with reasonable attorneys' fees and pre-judgment interest in accordance with 15 U.S.C. § 1117.

IX. Directing that this Court retain jurisdiction of this action for the purpose of enabling Rolex to apply to the Court at any time for such further orders and interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

X. Ordering that pursuant to 11 U.S.C. § 523(a)(6), Defendants be prohibited from a discharge under 11 U.S.C. § 727 for intentional, malicious, willful and fraudulent injury to Rolex.

XI. Awarding to Rolex such other and further relief as the Court may deem just and proper, together with the costs and disbursements that Rolex has incurred in connection with this action.

Dated: December 14, 2012

*[Signature]*
Michael W. O. Holihan
Florida Bar No.: 0782165
Stephanie Boomershine
Florida Bar No.:0046667
Holihan Law
1101 North Lake Destiny Road
Suite 275
Maitland, Florida 32751
Telephone: (407) 660-8575
Facsimile: (407) 660-0510
*michael.holihan@holihanlaw.com*
*stephanie.boomershine@holihanlaw.com*